# IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA

McQUEL D. SMITH,                    )
                                   )
            Plaintiff,             )
                                   )
vs.                                )         Case No. CIV-09-615-F
                                   )
MICHAEL J. ASTRUE,                 )
Commissioner, Social Security      )
Administration,                    )
                                   )
            Defendant.             )

## REPORT AND RECOMMENDATION

McQuel D. Smith ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405 (g) seeking judicial review of the Defendant Commissioner's final decision denying Plaintiff's applications for disability insurance benefits and supplemental security income payments[1] under the Social Security Act. This matter has been referred to the undersigned Magistrate Judge for proceedings consistent with 28 U.S.C. § 636(b)(1)(B). Upon review of the pleadings, the record ("Tr.") and the parties' briefs, the undersigned recommends that the Commissioner's decision be affirmed.

## Administrative Proceedings

---

[1]Both parties [Doc. Nos. 13, p. 2 and 14, p. 2] and the Administrative Law Judge [Tr. 15] agree that Plaintiff applied for both disability benefits and supplemental security income payments. Nonetheless, the undersigned has been unable to locate a supplemental security income application in the transcript and, consequently, has referred in this Report only to the disability insurance benefits documentation.

Plaintiff initiated these proceedings by filing his application seeking disability insurance benefits in February, 2005 [Tr. 59 - 61]. He alleged that he is a slow learner with difficulties in reading and spelling and that this became disabling as of July, 2003 [Tr. 59 and 116 - 117]. Plaintiff's claim was denied and, at his request, an Administrative Law Judge ("ALJ") then conducted a March, 2008 hearing where Plaintiff, who was represented by counsel, and a vocational expert testified [Tr. 54 and 319 - 342]. In her September, 2008 decision, the ALJ found that Plaintiff was able to perform both his past relevant work as well as other jobs existing in significant numbers in the national economy and, accordingly, was not disabled within the meaning of the Social Security Act [Tr. 15 - 27]. The Appeals Council of the Social Security Administration declined Plaintiff's request for review [Tr. 4 - 7], and Plaintiff subsequently sought review of the Commissioner's final decision in this court.

## **<u>Standard of Review</u>**

This court is limited in its review of the Commissioner's final decision to a determination of whether the ALJ's factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied. *Lax v. Astrue***,** 489 F.3d 1080, 1084 (10th Cir. 2007) (citations and quotations omitted). Nonetheless, while this court can neither reweigh the evidence nor substitute its own judgment for that of the ALJ, the court's review is not superficial. "To find that the [Commissioner's] decision is supported by substantial evidence, there must be sufficient relevant evidence in the record that a reasonable person might deem adequate to support the ultimate conclusion." *Bernal v.*

*Bowen,* 851 F.2d 297, 299 (10th Cir. 1988) (citation omitted). "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Id.* at 299.

## **Determination of Disability**

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C.§§423(d)(1)(A). The Commissioner applies a five-step inquiry to determine whether a claimant is disabled. *See* 20 C.F.R. §§404.1520(b)-(f), 416.920(b)-(f); *see also Williams v. Bowen*, 844 F.2d 748, 750-752 (10th Cir. 1988) (describing five steps in detail). Under this sequential procedure, Plaintiff bears the initial burden of proving that he has one or more severe impairments. 20 C.F.R. §§ 404.1512, 416.912; *Turner v. Heckler*, 754 F.2d 326, 328 (10th Cir. 1985). Then, if Plaintiff makes a prima facie showing that he can no longer engage in prior work activity, the burden of proof shifts to the Commissioner to show that Plaintiff retains the capacity to perform a different type of work and that such a specific type of job exists in the national economy. *Turner*, 754 F.2d at 328; *Channel v. Heckler,* 747 F.2d 577, 579 (10th Cir. 1984).

## **Plaintiff's Claims of Error**

Plaintiff maintains that the ALJ erred, first, by failing to properly analyze Plaintiff's treating source evidence, second, by improperly relying on the opinion of a State agency physician, and, third, in making her credibility assessment.

## Analysis

At step two of the sequential process, the ALJ found that Plaintiff – twenty-six years old at the time of the decision with a high school education achieved through special education classes and with substantial gainful activity as a hospital cleaner [Tr. 25] – was severely impaired by borderline to low average intellectual functioning and by psychotic and depressive disorders [Tr. 19]. In connection with this determination, the ALJ reviewed the results of a February, 2004 consultative psychological examination where testing revealed a full scale IQ of 81 [Tr. 19 and 204]. The examining psychologist concluded that "[Plaintiff's ability to do work related activities appears adequate. He has the ability to understand and remember most simple tasks. On this evaluation [Plaintiff] demonstrated the ability to sustain concentration and to persist to task completion. He is socially immature and has difficulty adapting to unfamiliar situations."[2] [Tr. 205]. The examining psychologist did not diagnose an impairment. *Id.*

The ALJ also reviewed the records of Plaintiff's treatment at the Jim Taliaferro Community Health Center from July, 2006 through August, 2007 [Tr. 19 and 20]. She noted his report of hearing (since he was very young) and interacting with voices, his reported suicide attempts at age eighteen after breaking up with his girlfriend, his reported depression, his pending prospects of imprisonment, his diagnosis of paranoid schizophrenia, his receipt of medications and his anger issues. *Id.* and Tr. 225 - 249 and 288 - 314.

_____

[2]Unless otherwise indicated, quotations in this report are reproduced verbatim.

4

The ALJ also referenced the results of a second consultative psychological examination in May, 2007 where Plaintiff advised the psychologist that he was unable to keep a job because he could not remember instructions or could not work quickly enough [Tr. 20 and 250]. On mental status examination, Plaintiff "was able to follow a written set of directions and a 3-step set of directions without error." [Tr. 252]. He had reportedly stopped using street drugs so he remained at home, avoiding old friends [Tr. 20 and 252]. The diagnostic impression was relational problems related to low cognitive functioning and rule out mild mental retardation. *Id.*

In evaluating the severity of Plaintiff's mental impairments and in determining whether Plaintiff had an impairment or combination of impairments which met or medically equaled the severity of a listed impairment, *see generally* 20 C.F.R. §§ 404.1520a and 416.920a, the ALJ considered the listings for schizophrenic, paranoid and other psychotic disorders, *see* 20 C.F.R. Pt. 404, Subpt. P., App. 1, § 12.03, for affective disorders, *id.* at §12.04, and for mental retardation, *id.* at § 12.05 [Tr. 20]. The ALJ found that, as a result of his impairments, Plaintiff suffered from mild restrictions in activities of daily living, moderate difficulty in maintaining social functioning, and moderate difficulty maintaining concentration persistence, or pace [Tr. 21]. No evidence of episodes of decompensation was found. *Id.* Consequently, Plaintiff's mental impairments were deemed to be severe.[3]

_____

[3]The regulations pertaining to the evaluation of mental impairments provide that the degree of a claimant's functional limitations will be rated in four broad functional areas – activities of daily living, social functioning, concentration, persistence, or pace, and any

(continued...)

Because, however, Plaintiff was found to have no marked limitations in the three functional areas – daily living activities, social functioning, and concentration, persistence, or pace – he did not meet or equal the criteria for a listed impairment. *Id.* *See* 20 C.F.R.. Pt. 404, Subpt. P., App. 1, §§ 12.03(B), 12.04(B), and 12.05(D).

After determining that Plaintiff's subjective claims were not credible [Tr. 23] – a determination which is analyzed separately in this Report – the ALJ assessed Plaintiff's residual functional capacity ("RFC")[4] as follows: "[Plaintiff] has a residual functional capacity for a range of all work.[5] He has no exertional limitations. He should not be expected to work directly with the public. He is capable of performing simple tasks, and he can read at a fifth grade level." [Tr. 22]. Based upon this RFC and the testimony of the

_____

[3](...continued)
episodes of decompensation, the so-called "B" criteria. *See* 20 C.F.R.. §§ 404.1520a(c)(3), 416.920a(c)(3), and Pt. 404, Subpt. P., App. 1, § 12.00(C). As to the first three areas, the possible ratings are none, mild, moderate, marked, and extreme. *Id.* at (c)(4). If the ratings in the first three areas are "none" or "mild" and if there have been no episodes of decompensation, a claimant's mental impairment is generally considered to be non-severe. *Id.* at (d)(1). Thus, a "moderate" or higher rating in any of the first three areas will result in the conclusion that a claimant's mental impairment is severe. Because "[t]he structure of the listing for mental retardation (12.05) is different from that of the other mental disorders listings . . . [p]aragraph D [of 12.05] contains the same functional criteria that are required under paragraph B of the other mental disorders listings." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(A).

[4]Residual functional capacity "is the most [a claimant] can still do despite [a claimant's] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

[5]Plaintiff does not challenge the ALJ's finding that he has no physical limitations [Tr. 22].

vocational expert, the ALJ found that Plaintiff retained the ability to perform his past relevant hospital cleaning work as well as other work existing in significant numbers in the national economy. [Tr. 25 - 26]. Thus, Plaintiff was not disabled within the meaning of the Social Security Act.

**Treating Source Evidence**

As his initial claim of error, it is Plaintiff's theory "that the ALJ failed to follow the treating source rule. No analysis was provided by the ALJ of whether or not the evidence from Jim Taliaferro [Community Health Treatment Center] warranted controlling weight; what weight was given; and a reasonable explanation as to why the ALJ apparently gave no weight to the treatment notes from Jim Taliaferro." [Doc. No. 13, p. 10]. Generally, Plaintiff maintains that "the ALJ only alluded to the evidence from Jim Taliaferro and did not specifically discuss the evidence." *Id.* at 7. Specifically, Plaintiff faults the ALJ for failing to give proper weight to Plaintiff's global assessment of functioning scores, *id.* at 5, 6, 7, and 9, and for failing to analyze a statement in Plaintiff's treatment notes that he was unemployable. *Id.* at 6 and 9 - 10.

The undersigned's review of the ALJ's decision reveals a thorough discussion of Plaintiff's treatment history at Taliaferro [Tr. 19 - 20]. The ALJ noted that Plaintiff had been treated from July, 2006 through August, 2007 [Tr. 19 - 20], that he had been diagnosed with a psychotic disorder – paranoid schizophrenia – [Tr. 19], that his speech was not spontaneous, *id.,* that he reported anger issues [Tr. 20], that he reported hallucinations [Tr. 19 - 20], that he had used drugs [Tr. 19], that he had a good family unit, *id.,* and that he had

pending burglary and possession charges. *Id.* Not only did the ALJ do far more than "allude[]," [Doc. No. 13, p. 7], to the evidence contained in the Taliaferro records, but the only treating source *opinion* evidence in the foregoing – the diagnosis of a psychotic disorder – was fully credited by the ALJ as was a diagnosis of a depressive disorder [Tr. 19].

With regard to "the ALJ's opinion of the probative value of global assessment of functioning ("GAF") scores," [Doc. No. 13, p. 7], Plaintiff correctly notes that the ALJ did not specifically reference Plaintiff's actual scores – 40[6] at the time of assessment with a high of 50[7] for the past year [Tr. 226 and 299]. The ALJ did not, however, ignore the fact that Plaintiff had received a low assessment and stated that "[a] treating source estimated the claimant with a low global assessment of functioning. The global assessment of functioning, however, is not intended for forensic purposes, such as an assessment of disability or competency or the individual's control over such behavior (*Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition,* pages xxiii and xxvii)." [Tr. 24].[8]

---

[6]A GAF of 31 - 40 is assessed when there is "[s]ome impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) OR major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood (e.g., depressed man avoids friends, neglects family, and is unable to work . . . ."). DSM-IV-TR, at p. 34 (bold-type emphasis deleted).

[7]A GAF of 41 - 50 is reflective of "[s]erious symptoms . . . OR any serious impairment in social [or] occupational . . . functioning. (e.g., no friends, unable to keep a job)." DSM-IV-TR, at p. 34 (bold-type emphasis deleted).

[8]The ALJ correctly stated that the DSM-IV cautions with regard to the application of diagnostic information for forensic purposes such as a disability determination. *See* American Psychiatric Assoc., *Diagnostic and Statistical Manual of Mental Disorders* xxxii-
(continued...)

"GAF" is the abbreviation for "Global Assessment of Functioning" and is a scale utilized by clinicians to reflect overall level of functioning. *See* American Psychiatric Assoc., *Diagnostic and Statistical Manual of Mental Disorders* 32 4th ed., Text Revision, 2000) (DSM-IV-TR). In a multiaxial assessment system, "Axis V is for reporting the clinician's judgment of the individual's overall level of functioning." *Id.* A GAF score without narrative explanation does not establish the existence of an impairment seriously interfering with a claimant's ability to work. *See Howard v. Commissioner of Social Sec.*, 276 F.3d 235, 241 (6th Cir. 2002) ("[T]he ALJ's failure to reference the GAF score in the RFC, standing alone, does not make the RFC inaccurate."). The Tenth Circuit Court of Appeals has relied upon the *Howard* decision in several unpublished cases. *See Camp v. Barnhart*, No. 03-7132, 2004 WL 1465777, at *1 (10th Cir. June 30, 2004) (a GAF score of 50 "without evidence that it impaired [claimant's] ability to work, does not establish an impairment."); and, *Cainglit v. Barnhart*, 85 Fed. Appx. 71, 75 (10th Cir. Dec. 17, 2003)("In the absence of any evidence indicating that [the mental health evaluators] assigned these GAF scores because they perceived an impairment in [claimant's] ability to work, the scores, standing alone, do not establish an impairment seriously interfering with [claimant's] ability to perform basic work activities.").[9] Plaintiff does not direct the court to any statement by

---

[8](...continued)
iii. 4th ed., Text Revision, 2000) (DSM-IV-TR).

[9]After reviewing the description of the various GAF scales quoted *supra* at notes 5 and 6, and the possible reasons for the assignment of a particular GAF rating, the court in
(continued...)

any clinician that their GAF assessment was related to Plaintiff's ability to work as compared to some other factor or factors in his life. Thus, standing alone, Plaintiff's GAF ratings do not mandate a conclusion that the ALJ erred by failing to give weight to Plaintiff's scores.

Plaintiff's final allegation in connection with the ALJ's analysis of the Taliaferro treatment notes is that the ALJ failed to give weight to "the assessor's observations concerning 'role performance.'" [Doc. No. 13, p. 6]. Specifically, Plaintiff appears to claim that the ALJ was required to give some special significance to a statement the Plaintiff "was unemployable due to his failure to comply with rules or expectations." *Id.* As Plaintiff acknowledges, however, *id.* at 7, the ALJ specifically stated that the ultimate issue of disability is reserved to the ALJ and that opinions on that issue are never given controlling weight [Tr. 24].

The ALJ is correct. As explained by Social Security Ruling ("SSR") 96-5p, 1996 WL 374183, "[m]edical sources often offer opinions about whether an individual who has applied for title II or title XVI disability benefits is 'disabled' or 'unable to work," or make similar statements of opinions." *Id.* at *5. The assessor's purported opinion that Plaintiff is unemployable is an opinion that Plaintiff is disabled. An opinion that a claimant is unable to work or is disabled is not a medical opinion. *See* 20 C.F.R. § 416.927(e). Rather, it is an opinion on an issue reserved to the Commissioner because it is a case-dispositive

---

[9](...continued)
*Cainglit* further noted that "[a] GAF score of 39 - 45 thus may indicate problems that do not necessarily relate to one's ability to work." *Cainglit,* 85 Fed. Appx. at 75.

administrative finding.  *Id.*  In other words, as the regulation explains, such a finding "would direct the determination or decision of disability."  *Id.*   Moreover, the statement that Plaintiff is unemployable does not appear to be an "opinion" but, instead, subjective information provided by Plaintiff to a counselor on initial intake at Taliaferro[10] about his role as a worker and his own explanation of why he had been unable to hold a job.[11]  The ALJ committed no error in her analysis of Plaintiff's treatment records from Taliaferro.

### Opinion Evidence from State Agency Consultants

The ALJ specifically determined that Plaintiff was "somewhat less restricted on the "B" criteria" than did a State agency consulting psychologist[.]" [Tr. 24].  Plaintiff maintains that the ALJ erred because she "picked some of the limitations proffered by the reviewing psychologist and rejected others without any explanation of why some were accepted and others rejected." [Doc. 13, p. 11].

As was previously discussed, *supra* at pp. 5 -6, at steps two and three of the sequential process the ALJ determined that Plaintiff was mildly limited in his activities of daily living and moderately limited in maintaining social functioning as well as in maintaining concentration, persistence, or pace [Tr. 21].  The consultant found moderate limitations in all three functional areas [Tr. 268].

_____

[10]Plaintiff states that his treatment at Taliaferro began on July 10, 2006 [Doc. No. 13, p. 5], the same date that the counselor according to Plaintiff, "opined" that he was unemployable.  *Id.* at 6.

[11]In providing the history of his illness to the examining psychologist in May, 2007, Plaintiff voiced the same rationale for his inability to hold a job [Tr. 250].

In support of his claim of error, Plaintiff relies on the decision in *Haga v. Astrue,* 482 F.3d 1205, 1207-8 (10th Cir. 2007) where the court found that the ALJ should have explained why he rejected certain moderate restrictions on a consultant's *RFC* assessment while adopting other restrictions. Plaintiff, however, is confusing a "B" criteria finding with the assessment of an RFC restriction. As the ALJ correctly[12] explained, "[t]he limitations identified in the "paragraph B" and "paragraph C" criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at step two and three of the sequential process." [Tr. 21]. Both the ALJ and the State consultant found moderate[13] limitations and, thus, both found Plaintiff to have a severe mental impairment, and no further explanation other than that provided by the ALJ was required.

Plaintiff further argues that because of "the lack of discussion concerning her reliance on the State agency physicians . . . the ALJ's Decision cannot be said to be substantially supported by the evidence." [Doc. No. 13, p. 12]. The ALJ's decision makes clear that she did, as she must, consider the opinions of the State agency consultants.[14] It is also clear from

---

[12]Social Security Ruling, 96-8p, 1996 WL 374184, at * 4.

[13]Had, of course, the consultant's found multiple *marked* difficulties in the paragraph B functional areas, the result could be different because the possibility of meeting a listed impairment would be implicated.

[14]With regard to the opinions of State agency medical consultants, Social Security regulations provide that

Administrative law judges are not bound by any findings made by State agency medical or psychological consultants, or other program physicians or psychologists. However, State agency medical and psychological consultants

(continued...)

the decision that in addition to considering those opinions [Tr. 24], the ALJ relied upon the findings of the consultative examining psychologists as well as Plaintiff's treatment at Taliaferro in analyzing the severity of Plaintiff's impairments and in formulating his RFC [Tr. 19 - 22]. No error was committed by the ALJ in connection with her consideration of the opinions of the State agency consultants.

## Credibility

In considering Plaintiff's subjective complaints, the ALJ stated that

> [t]he claimant testified that he was left-handed; he was not married; he had a 10-month-old child who lived with her mother. He went to jail in 2006 for fourteen days, after which he was on probation; he was a high school graduate in special education classes; he had not performed military service. The claimant was not working at the time of the hearing. In the past, he had performed several jobs for four to six months at a time. He was supported by his mother, who worked at the YMCA; his little brother lived with them. On a typical day, he helped his mom clean and do laundry. He received food stamps. He never had a driver's license; he had been driven to the hearing by his mother. He could read small words; he could take a brief telephone message;[15] he could add and subtract "a little." The claimant said that he went to church on Sundays; he spent time with his daughter; when shopping he had to depend on the cashier to give him correct change.

---

[14](...continued)
and other program physicians and psychologists are highly qualified physicians and psychologists who are also experts in Social Security disability evaluation. Therefore, administrative law judges *must* consider findings of State agency medical and psychological consultants or other program physicians or psychologists as opinion evidence . . . .

20 C.F.R. §§ 404.1527(f)(2)(i), 416.927(f)(2)(i)(emphasis added).

[15]Plaintiff actually testified that he would *not* be able to take a brief telephone message for a family member "because I forget." [Tr. 329].

> The claimant said that he had been "picked on" in the past; sometimes he "lashed out." He had taken medications, but they made him sleepy; without medication, he had anger problems. The claimant received supplemental social security income as a child. At the time of the hearing, the claimant said that he did not use drugs or alcohol.

[Tr. 22 - 23]. Thus, the ALJ, as required, considered Plaintiff's allegations of disabling symptoms in order to "decide whether [s]he believe[d] them." *Thompson v. Sullivan,* 987 F.2d 1482, 1489 (10th Cir. 1993) (quotation omitted). In making this determination, an ALJ should consider factors such as

> the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence.

*Hargis v. Sullivan,* 945 F.2d 1482, 1489 (10th Cir. 1991) (quotation omitted).

Here, based upon his consideration of the evidence of record, the ALJ concluded that

> [t]he claimant received disability in a determination made in 1995, based on learning and speech difficulties. The claimant's teacher noted that his intellectual level was above the level for educatable mentally handicapped. He had special problems in reading, language arts, mathematics, and content in social studies and science. The claimant had difficulties interacting with adults and peers. In 2000, the claimant was polite and respectful to adults and got along with peers. He took longer to complete assignments. He had been dismissed from speech therapy, but still could be difficult to understand.

> The claimant has had minimal treatment, and he has not followed up with planned treatment. An assessment of the claimant was close in time to the above-mentioned dismissal for lack of reconsideration (Exhibits B5F and B13F). During the hearing and to his treating professionals, the claimant admitted to having run out of medication. The claimant did not appear for some of his appointments and he did not appear motivated to improve. He

declined treatment except when he was at risk of going to prison or close in time to disability determinations.

The claimant was very vague at the hearing. He did not appear motivated. He described the reasons for leaving his places of employment in different terms than he had used when close in time to the events. The record reveals inconsistencies in reporting educational goals (Exhibit B6F). The claimant first reported that he stayed around his mother's house and watched television (Exhibit B2F), then reported that he did not really like television (Exhibit B6F). He did not mention any depression or suicide attempts (later alleged since age 18) during his initial evaluation in 2004, at age 21. The claimant did not mention hearing voices during that evaluation in 2004 or during the redetermination review in 2000. These were mentioned only after he was facing prison and appear suspect. The claimant has a history of abuse of drugs; he reported that he had quit using drugs when he was questioned by a consultative psychologist in May 2007 (Exhibit B6F). He did not admit to such at the hearing. Such inconsistencies diminish the claimant's credibility significantly.

The claimant's has engaged in a wide range of activities. His activities of daily living have included cleaning, doing laundry, going to church on Sundays, visiting with friends, playing basketball, talking on the telephone, preparing meals, watching television, looking for work, and spending time with his daughter and others. Such activities have not been inconsistent with an ability to work. Inability to find work cannot be the basis for a finding of disability. The location, duration, frequency and intensity of the claimant's symptoms and limitations have not been such as would preclude work.

[Tr. 23 - 24].

In reaching these conclusions, the ALJ focused primarily on Plaintiff's treatment, including the timing of that treatment, on the inconsistencies in his statements, particularly in his reports of symptoms, and on his daily activities. Plaintiff's *only* objection to the ALJ's assessment is that a claimant with a mental impairment is likely to be poorly motivated, to be vague, and to miss scheduled treatment, concluding that "[f]inding fault with an individual who suffers from mental limitations and makes poor personal choices is not a sound

practice." [Doc. No. 13, p. 13]. The ALJ's focus on Plaintiff's spotty treatment record, however, was more on the timing of Plaintiff's treatment – "when he was at risk of going to prison or close in time to disability determinations" [Tr. 23] – rather than on the lack of treatment or the occasional missed appointment. Plaintiff does not take issue with this finding nor does he maintain that the ALJ incorrectly described the inconsistencies in his reports of symptoms. As the ALJ stated, in May, 2004 Plaintiff, at the age of twenty-one and a half years, reported to an examining psychologist that he had no history of "serious emotional, behavioral or physical disability." [Tr. 203 - 204]. Nonetheless, two years later he advised clinicians at Taliaferro that "he has heard voices since he was very young, [and that] suicidal thoughts emerged at 18 yrs. old and he has attempted at least 2 times." [Tr. 226].[16]

The ALJ's conclusion – that Plaintiff's subjective complaints are not entirely credible – is well supported by substantial evidence. An ALJ's "[f]indings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Kepler v. Chater,* 68 F.3d 387, 391 (10th Cir. 1995) (quotation omitted). The ALJ properly and sufficiently explained the required link between the evidence of record and his finding that Plaintiff's allegations were not entirely credible. Moreover, "so long as the ALJ sets forth the specific evidence he relies on in evaluating the claimant's credibility," *Qualls v. Apfel,* 206 F.3d 1368, 1372 (10th Cir. 2000), "a formalistic factor-by-factor

---

[16]The details of Plaintiff's suicide attempts at age eighteen are described in these same records [Tr. 231].

recitation of the evidence" is not required in the Tenth Circuit. *Id.* Plaintiff has failed to establish that the ALJ committed any error in connection with her assessment of Plaintiff's credibility.

## **RECOMMENDATION AND NOTICE OF RIGHT TO OBJECT**

For the foregoing reasons, the undersigned recommends that the Commissioner's decision be affirmed. The parties are advised of their right to object to this Report and Recommendation by February 17, 2010, in accordance with 28 U.S.C. §636 and Fed. R. Civ. P. 72. The parties are further advised that failure to make timely objection to this Report and Recommendation waives their right to appellate review of both factual and legal issues contained herein. *Moore v. United States*, 950 F.2d 656 (10th Cir. 1991).

This Report and Recommendation disposes of all issues referred to the Magistrate Judge in this matter.

ENTERED this 28th day of January, 2010.

BANA ROBERTS
UNITED STATES MAGISTRATE JUDGE